GREENBERG TRAURIG, LLP
Cory Mitchell Gray, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 360-7900
Attorneys for Plaintiff

--and—

WEINGARTEN LAW FIRM, LLC
Sheryl Weingarten Morris, Esq.
Douglas K. Wolfson, Esq.
1260 Stelton Road
Piscataway, New Jersey 08854
732-393-0048
Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOARDWALK 1000, LLC | Civil Action No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| STAR LIGHT EVENTS, LLC d/b/a SCORES GENTLEMEN'S CLUB, | |
| Defendant. | |

Plaintiff Boardwalk 1000, LLC ("Plaintiff" or "Boardwalk") for its Complaint against

defendant Star Light Events, LLC d/b/a Scores Gentlemen's Club ("Scores") alleges as follows:

### NATURE OF THIS ACTION

1.      This is an action by Plaintiff, the owner of certain real property formerly known

as the Trump Taj Mahal Hotel & Casino located at 1000 Boardwalk, Atlantic City, New Jersey

08401 (the "Property"), for a declaratory judgment that Scores' lease for a portion of the

Property has expired by its terms and that (i) Scores has no further right to occupy or utilize the

space formerly leased by it at the Property; and (ii) that Scores is not able to satisfy the contractual conditions precedent under the Lease to exercise its options to extend the term of the Lease.

2.     As set forth more fully below, Scores formerly operated a 'gentlemen's club' at the Property pursuant to a written lease between Scores and Trump Taj Mahal Associates, LLC ("TTMA"), the prior owner of the Property.  Notwithstanding that Scores' lease has expired by its terms, Scores has asserted a continuing right to operate at the Property, which assertion is, among other things, impeding and compromising the  plans to open a newly developed  Hard Rock Hotel & Casino at the Property on schedule.

### THE PARTIES

3.     Boardwalk is a New Jersey limited liability company with its principal place of business at the Property.  Boardwalk is the current owner of the Property, which it acquired on or about March 31, 2017, from TTMA.  Boardwalk acquired the Property with the intent to redevelop and open a Hard Rock Hotel & Casino at the Property, which would provide a rock and roll based entertainment experience for both families and adults.  The ultimate ownership interests in the members of Boardwalk are held by persons who are each citizens of states other than New York.

4.     Upon information and belief, Scores is a New York limited liability company with a principal place of business at 617 11th Avenue, New York, New York. Scores is in the business of operating "gentlemen's clubs".  Upon information and belief, Robert Gans is the sole owner and Managing Member of Scores; Gans is a citizen of the State of New York.  As set forth more fully below, Scores operated a "gentlemen's club" at the Property pursuant to written lease agreement with TTMA.

2

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over Boardwalk's claim pursuant to 28 U.S.C. §1332(a)(1), as the matter in controversy exceeds $75,000.00, exclusive of interests and costs, and is between citizens of different states.

6.     The Court may declare the rights and other legal remedies of the parties and grant further relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 because an actual controversy exists within the Court's jurisdiction.

7.     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (c), as a substantial number of the events giving rise to Boardwalk's claim occurred in this judicial district, and because Scores is subject to *in personam* jurisdiction in this judicial district.

8.     This Court has *in personam* jurisdiction over Scores, which has transacted business in the State of New Jersey in connection with the matters at issue.   Further, Scores has contractually obligated itself to submit to the jurisdiction of courts within the State of New Jersey.

## FACTS

9.     On or about September 7, 2010, TTMA, which at that time operated a casino hotel at the Property, and Scores entered into a certain Agreement of Lease (the "Lease"), pursuant to which, *inter alia*, TTMA as Landlord, agreed to, and did, lease to Scores, as Tenant, approximately 20,000 square feet of interior space at the Property, together with approximately 9,500  square feet of outside deck space at the Property.  A true and correct copy of the Lease is annexed hereto as Exhibit A.  The location and dimension of the portion of the Property leased to Scores is identified on Schedule A to the Lease (the "Leased Premises").

10.     Scores intended to utilize the Leased Premises to operate a so-called "gentlemen's club" at which music, food and beverages would be available and female dancers would

perform; Scores did open and operate a "gentlemen's club" at and within the Leased Premises on or about September 13, 2013.

11.     Pursuant to Section 2 of the Lease, the initial five year term of the Lease (defined therein as the "Initial Term") commenced "upon the *earlier* of:  (i) the first day of the month in which Tenant first opens the Premises for business, or (ii) the date that is one hundred eighty 180) days after the date the Landlord turns over the Premises to Tenant for construction or (iii) the date that is three hundred (300) days after the date of this Agreement of Lease is fully executed (the "Commencement Date")" (emphasis supplied).  The rent for the Initial Term was to be $180,000 for the first year, and $540,000 for the second through fifth years of the Initial Term.

12.     Pursuant to Section 2.3 of the Lease, the Initial Term of the Lease ends on the "last day of the calendar month immediately preceding the appropriate anniversary of the Commencement Date".

13.     Pursuant to Section 2.2 of the Lease, TTMA granted to Scores three (3) options which could be exercised successively, each to extend the term of the Lease for five (5) years (each, an "Option Term"), provided certain conditions precedent were satisfied with respect to each Option Term, including, *inter alia*, that "the Premises had produced gross revenue of more than $4,000,000 dollars in the twelve (12) month period immediately preceding the notice". Pursuant to the Lease, rent for the term of the first five-year option, which Scores continues to assert a right to exercise, would be not less than $540,000 per year.

14.     On or about July 12, 2012, TTMA and Scores entered into and executed that certain Amendment to Agreement of Lease (the "Amendment") pursuant to which Scores was

granted five (5) option terms of five (5) years each, replacing the three (3)  options terms initially granted in the Lease.   A true and correct copy of the Amendment is annexed hereto as Exhibit B.

15.     The Amendment did not in any other way change, amend or modify Section 2 of the Lease; specifically, the Amendment did not change, amend or modify the definition of "Commencement Date" as set forth in the Lease.

16.     Three hundred (300) days from the execution of the Lease was July 4, 2011.

17.     Accordingly, pursuant to Section 2.1 of the Lease, the Initial Term of five years therefore commenced no later than July 4, 2011 (300 days after the date of execution of the Lease).

18.     Accordingly, the Initial Lease Term of five years expired no later than June 30, 2016 (the last day of the calendar month immediately preceding the fifth anniversary of the Commencement Date, as provided by Section 2.3 of the Lease).

19.     Pursuant to Section 2.2 of the Lease, Scores was required to exercise its contractual option to extend the Initial Term, if at all, "not more than two hundred forty (240) days [and] not less than one hundred eighty (180) days prior to the expiration of the Initial Term".

20.     Pursuant to Section 2.2 and 2.3 of the Lease, Scores was therefore required to provide written notice to TTMA of its election to extend the Lease between October 4, 2015 and December 3, 2015.

21.     Scores did not provide to TTMA written notice of its intent to exercise its option to extend the term of the Lease.

22.     Upon information and belief, Scores did not have $4,000,000 in gross revenues in the twelve (12) month period immediately preceding any of the dates during which it would have

been required, pursuant to Sections 2.2 and 2.3 of the Lease to provide written notice of its intent to exercise an option to extend the Lease.

23.     In a letter to its employees dated August 22, 2016, Scores' Chief Operating Officer stated that Scores had "experienced much difficulty in staying afloat for the past 2 1/2 years…", and that Scores "had no other choice but to cease operation" immediately on August 21, 2016.   As further evidence of its severe financial difficulties and weak operating performance, Scores repeatedly breached the terms of the Lease by failing to make Lease payments on a timely basis in accordance with its contractual obligations under the Lease. In fact, on multiple occasions Scores delivered rent checks to the Landlord that were returned as a result of insufficient funds.  Accordingly, Scores could not satisfy the conditions precedent to the exercise of its contractual right to exercise an option to extend the term of the Lease.

24.     Accordingly, the term of the Lease ended, and the Lease expired, no later than June 30, 2016 (the last day of the calendar month immediately preceding the fifth anniversary of the Commencement Date, as provided by Section 2.3 of the Lease).

25.     On or about August 31, 2016, TTMA, in anticipation of closing the Trump Taj Mahal Hotel & Casino, entered into a letter agreement with Scores, which by that time had ceased operating at the Leased Premises, pursuant to which, *inter alia*, Scores' obligation to make payments to remain open at the Property was suspended and TTMA and Scores agreed to certain mutual obligations during the closure of the Trump Taj Mahal Hotel & Casino.

26.     The August 31, 2016 letter agreement did not extend (a) the Initial Term of the Lease or (b) the time during which Scores could exercise its option to extend the Initial Term of the Lease.

27.     Scores ceased operating at the Property on or about August 21, 2016.

28.     Boardwalk acquired the Property from TTMA on March 31, 2017, after the expiration of the Lease in accordance with its stated terms.

29.     Scores has informed Boardwalk that it believes the Lease remains in full force and effect and that Scores has the continued right to open within the planned Hard Rock Hotel & Casino Atlantic City and to exercise its future options to extend the Lease.

30.     Scores breached its contractual obligations under the Lease thereby causing an "Event of Default" after it repeatedly failed to make Lease payments on a timely basis in accordance with the terms and conditions under the Lease.  In addition, Scores breached its contractual obligations under the Lease thereby causing an "Event of Default" when Scores repeatedly refused to deliver its historical revenue data to the Property owner so that it could comply with its obligation to report aggregate revenue amounts at the Property to the New Jersey Division of Gaming Enforcement from businesses at the Property that provide food, beverage, retail, entertainment, or hospitality-related items.

## COUNT ONE
### (Declaratory Judgment)

31.     Boardwalk re-alleges and incorporates by reference each of the allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

32.     The Lease has expired by its express terms without Scores timely invoking its option to extend the term of the Lease.  In addition, Scores did not and cannot satisfy the contractual conditions precedent under the Lease to exercise its option to extend the term of the Lease.

33.     An Event of Default under the Lease has occurred which allows Boardwalk to immediately terminate the Lease as a result of Scores failing to (i) make Lease payments within

the prescribed time periods set forth in the Lease, and (ii) deliver its historical revenue data so that the Property owner is able to comply with its mandated reporting obligations to the New Jersey Division of Gaming Enforcement.

34.     Notwithstanding the expiration of the Lease, Scores asserts that the Lease continues in full force and effect, and threatens Boardwalk's ability to lease space at the Property and Hard Rock Hotel & Casino Atlantic City's ability to open on schedule and operate without impediment or potential denigration of its brand.

35.     There is a substantial and continuing controversy between the parties and a declaration of rights is both necessary and appropriate to determine the rights of the parties, and to ensure that Boardwalk can permit the opening of the Hard Rock Hotel & Casino Atlantic City at the Property without (i) any interference by Scores, or (ii) the inclusion of Scores as a tenant at the Property.

36.     Declaratory relief will further the ability of Boardwalk to operate the Property without interference and a determination of the rights of the parties will avoid the potential for a suit for monetary damages hereafter.

WHEREFORE, Boardwalk demands judgment as follows:

A.   Declaring that the Lease has expired by its terms and is of no further force or effect;

B.   Declaring that Scores did not and cannot satisfy the contractual conditions precedent under the lease to exercise its option to extend the term of the Lease;

C.   Declaring that Scores is not entitled to recover any damages from Boardwalk;

D.   Declaring that Scores breached the terms of the Lease and Boardwalk is entitled to terminate the Lease without any further action;

E.   Awarding Boardwalk its attorney's fees and costs of suit; and

E.   Granting Boardwalk such other and further relief as this Court may deem just and proper under the circumstances.


GREENBERG TRAURIG, LLP

*s/ Cory Mitchell Gray, Esq.*
Cory Mitchell Gray, Esq.

-- and --

WEINGARTEN LAW FIRM, LLC

*s/ Douglas K. Wolfson, Esq.*
Douglas K. Wolfson, Esq.

Attorneys for Plaintiff

Dated: September 18, 2017

9